**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DANIEL MEDELLIN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DR. WHEALON, LIEUTENANT JACK, JOHN DOE PLACEMENT OFFICER, JANE DOE NURSES, WEXFORD HEALTH SOURCES, INC., JOHN DOE WING OFFICER, OFFICER DURN, SERGEANT HIGGINS, JOHN DOE MENTAL HEALTH PROFESSIONAL, and CENTURION HEALTH,**<br><br>**Defendants.** | **Case No. 26-cv-777-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Daniel Medellin, an inmate of the Illinois Department of Corrections who is currently incarcerated at Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Medellin alleges that Defendants failed to protect him and were deliberately indifferent to injuries he sustained in an attack by his cellmate.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

Medellin alleges that a John Doe placement officer placed inmate Inez Gleghorn in Medellin's cell despite the inmate being classified as severally mentally impaired (Doc. 1, p. 7). Medellin alleges that the inmate had a history of violence with other staff and inmates and had stabbed his own twin brother (*Id*.). On January 11, 2026, Medellin discovered his cellmate on the floor and approached him to check on his condition, but the inmate attacked Medellin, biting his finger down to the bone (*Id*. at pp. 7-8). Correctional Officer Caleb Branch witnessed the assault but merely walked away and failed to take any action to intervene in the attack (*Id*. at p. 8). Fifteen minutes later, Lieutenant John Doe arrived, restrained the cellmate, and escorted Medellin to the healthcare unit (*Id*.).

Medellin was transported to an outside hospital where his wounds were treated (Doc. 1, p. 8). The emergency room physician ordered Medellin to receive an evaluation by an orthopedic specialist and provided him with a splint for his finger (*Id*.). He noted that the wound needed to be cleaned daily (*Id*.).

Upon returning to Centralia, Medellin was housed in the healthcare unit, but the nurses in the unit refused to clean his wound despite repeated requests for treatment (Doc. 1, p. 8). One week after his return, Medellin's finger became infected. Medellin informed nursing staff, Lieutenant Jack, and Dr. Whealon about his finger, noting that he had severe pain, swelling, disorientation, and pus in the wound (*Id*. at p. 9). Despite his request for care, Medellin alleges that he was denied adequate medical treatment until he wrote an emergency grievance which prompted his transport to another hospital for treatment (*Id*.). He was diagnosed with a severe infection and a broken bone. His condition required intravenous

antibiotics. Upon his return to the prison, a nurse initially tried to return him to his cell without wound protection or his splint; she later provided him with a covering (*Id.*).

On February 2, 2026, Medellin attended an orthopedic appointment where the wound was cleaned (Doc. 1, p. 9). He was ordered to return in one week for further care, but Medellin was never allowed to return to the orthopedist (*Id.* at pp. 9-10).

While housed in the healthcare unit, Medellin alleges that he was placed in a cell without heat (Doc. 1, p. 10). From January 24-29, 2026, he repeatedly informed Durn, Sergeant Higgins, Lieutenant Jack, Dr. Whealon, and mental health professionals that his cell lacked heat (*Id.*). The conditions were freezing, but none of the defendants sought to fix the issue with the heat (*Id.*). Medellin remained in the cell for six days and suffered from exposure to the cold, loss of appetite, emotional distress, and depression (*Id.*). Medellin alleges that the freezing temperatures affected his physical healing, causing him additional pain. On January 27, 2026, he informed mental health staff at the prison that he was suffering psychologically as a result of the attack, his untreated finger, and the freezing conditions, but no one sought to take any action (*Id.*).

**Preliminary Dismissals**

Medellin alleges that several nurses and mental health professionals failed to provide him with proper treatment. Although Medellin may certainly proceed against identified John and/or Jane Doe Defendants (*i.e.* Jane Doe Nurse #1, John Doe Mental Health Professional #2), his claim against nurses and mental health staff are too generic to state a viable claim. Medellin fails to even indicate the number of nurses that he spoke to about his medical condition. Thus, any claim against nursing staff and mental health professionals is **DISMISSED without prejudice**.

Medellin refers to Wexford Health Sources and Centurion in his case caption but fails to state a viable claim against either company. He alleges that policies, practices, and customs of the company violated his rights, noting that his medical treatment and follow-ups were delayed in order to reduce costs. He also alleges that nurses were not adequately trained in wound care. But he only alleges in conclusory fashion that these policies caused delays in his care. There are no allegations in the statement of claim to suggest that delays in care were caused by cost-saving policies or inadequate training. Thus, any claim against Wexford or Centurion is **DISMISSED without prejudice**.

**Discussion**

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment failure to protect claim against John Doe Placement Office for placing Inmate Gleghorn in Medellin's cell despite knowledge of Gleghorn's history of instability and violence.**

**Count 2:** **Eighth Amendment failure to protect claim against John Doe Correctional Officer (Caleb Branch) for failing to intervene in the assault on Medellin.**

**Count 3:** **Eighth Amendment deliberate indifference to medical needs claim against Lieutenant Jack and Dr. Whealon for failing to adequately treat Medellin's wound, resulting in infection.**

**Count 4:** **Eighth Amendment conditions of confinement claim against Durn, Sergeant Higgins, Lieutenant Jack, and Dr. Whealon for housing Medellin in a freezing cell for six days in the healthcare unit.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is**

**mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

**Counts 1 and 2**

To state a viable failure to protect claim, a plaintiff must show that prison officials were aware of a specific, impending, and substantial threat to his safety, and acted with deliberate indifference to that threat. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Medellin alleges that his cellmate had a history of mental illness and violence, including assaults against other inmates. He further alleges that the placement officer knew of this history and still placed him with Medellin. At this early stage, that is enough to state a failure to protect claim. *See Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010) (inmate stated a failure to protect claim when he alleged defendant placed him with an inmate who had a known history of violence).

Medellin also states a claim against the John Doe Correctional Officer, who Medellin notes in his statement of claim may be Caleb Branch (Doc. 1, p. 8), for his failure to intervene after witnessing the attack. Thus, Count 1 shall proceed against John Doe Placement Officer, and Count 2 shall proceed against John Doe Correctional Officer.

The Court **ADDS** the current warden of Centralia Correctional Center, Jeffrey Wehking (in his official capacity only), to the case in order to respond to discovery aimed at identifying the John Does.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 3**

In order to state a claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendants' actions were more than negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Here, Medellin fails to allege when he spoke to each official, what he told them, and their response, if any. Further, he acknowledges that he was transported to an outside hospital for treatment for his finger. Although he alleges that his transfer was delayed, it is not entirely clear how long he allegedly remained in the healthcare unit without care. These limited allegations fail to state a claim.

**Count 4**

Medellin also fails to state a conditions of confinement claim in Count 4. Medellin alleges that he remained in a freezing cell in the healthcare unit for six days. He alleges that he informed Durn, Sergeant Higgins, Lieutenant Jack, and Dr. Whealon about the conditions, but he fails to indicate when he spoke to each defendant and their response to his complaints. These limited allegations as to Defendants' actions fail to state a claim. Thus, Count 4 is also **DISMISSED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against John Doe Placement Officer. Count 2 shall proceed against John Doe Correctional Officer. All other claims and defendants are **DISMISSED without prejudice**. Jeffrey Wehking is **ADDED** to the case, in his official capacity only, to help identify the John Does.

The Clerk of Court shall prepare for Jeffrey Wehking (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Medellin. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on defendant, and the Court will require defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If defendant can no longer be found at the work address provided by Medellin, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**. Because Warden Wehking is only in the case to identify the John Does, he does not need to file an Answer. Once counsel has entered his appearance, the Court will enter a scheduling order with further instructions on discovery regarding the John Does.

If judgment is rendered against Medellin, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Medellin is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 1, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**